## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| PATRICK DUNN, | ) | |
| **Plaintiff,** | ) | |
| | ) | CIVIL ACTION NO. 2:17-cv-477 |
| v. | ) | |
| | ) | |
| S & S EAGLES, LLC | ) | |
| **Defendant.** | ) | |
| | ) | |

RECEIVED
17 JUL 17 P 4:08

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DIST. ALA.

## COMPLAINT

## I.   INTRODUCTION

Plaintiff, Patrick Dunn, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, et. seq. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendant to remove architectural barriers. In Count Two, Plaintiff seeks to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiff seeks to enjoin the Defendant's use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.  Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.  Venue is proper in this Court, the United States District Court for the Middle District of Alabama pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Middle District of Alabama.

3.  Plaintiff, Patrick Dunn, was involved in an automobile accident that caused permanent damage to his C-7 vertebra in his spinal cord. As a result, he became paralyzed, which has permanently confined him to a wheelchair. The extent of Mr. Dunn's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Mr. Dunn is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a

physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4. Defendant, S & S Eagles, LLC, (hereinafter "Marathon"), is a limited liability company that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific in personam jurisdiction. Upon information and belief, S & S Eagles, LLC, "owns" and "operates" the Marathon convenience and package store located at 8346 Hwy 97, Letohatchee, AL 36047[1]. 42 U.S.C. § 12182. The Marathon convenience and package store is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Moreover, the convenience and package store provides on-the-go convenience that provides quality products and adult beverages among its wide assortment of convenience store items to the public, which qualifies Marathon as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5. All events giving rise to this lawsuit occurred in the Middle District

---

[1] According to mymarathonstation.com/storehome/107458 the address is 8436 Hwy 97, Letohatchee, AL 36047; however, the Lowndes County Geographical Information System parcel record lists the address as 3720 Hwy 97 for the Marathon Gas Station parcel address. For purposes of this Complaint, Plaintiff is using the address that Defendant has displayed on the actual building itself which is "8346" HWY 97, Letohatchee, AL.

of Alabama and the Defendant is a citizen thereof.

6. Plaintiff, Patrick Dunn travels to Montgomery, Alabama from his home in Andalusia, Alabama because that is where his lawyer's office is located. Mr. Dunn also travels to Birmingham, Alabama and its nearby areas because that is where his son lives, as well as where Mr. Dunn's doctor is located. Mr. Dunn will see this doctor for the rest of his life. Mr. Dunn's visitations with his son are twice monthly and have been for at all times throughout the last 5 years. Most visitations with Mr. Dunn's son involve travel to Birmingham. During Mr. Dunn's travels to Montgomery or Birmingham, he stops at the Defendant's convenience store because it is directly off of the interstate. He has stopped there many times over the years and has stopped there and patronized the store in 2016 and 2017. Mr. Dunn enjoys going to the Marathon convenience store because its conveniently located and because of its package store. Mr. Dunn intends to continue going to Defendant's convenience store because he enjoys the on-the-go convenience that offers quality products and adult beverages among its wide assortment of other convenience store items. Mr. Dunn will return not only to shop at the Marathon store, but also to confirm compliance with the ADA by the

Defendant. Mr. Dunn does not know exactly when he will go back to the Defendant's place of public accommodation, because he has not planned out every trip to Montgomery or Birmingham for the rest of his life. Such specific planning is not necessary to invoke the ADA. See, e.g. *Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc.* No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Mr. Dunn definitely intends to return to the convenience and package store, even after all ADA Title III violations are remediated.

7.    Because of the barriers described below in paragraph 19 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of his disabilities.

8.    Plaintiff accordingly, has Article III standing to pursue this case because (1) he is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's store is a place of public

accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury by being denied access to the store by architectural barriers, by being denied access by the Defendant's practices described throughout this Complaint, and by Defendant's denial of the use of the convenience store for his full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries there exists a genuine threat of imminent future injury, as described in paragraph 17.

## II.   PLAINTIFF'S CLAIMS ADA, Title III

9.   On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); See also, § 36.304).

10.   Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a convenience store providing on-the-go convenience that provides quality products and adult beverages among its wide

assortment of convenience store items to the public. Accordingly,

it is covered by the ADA and must comply with the Act.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(iv) and (v)
### *(Architectural Barriers)*

**Defendant's Existing Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in This Complaint**

11.  Plaintiff is informed and believes based on publicly available information that the convenience store in which the Marathon convenience store located at 8346 Hwy 97, Letohatchee, AL 36047, is located was originally constructed in 1979 with alterations and/or improvements made to the Marathon convenience store and package store in 2008.

12.  The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including

*individuals who use wheelchairs.* 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.*
§ 36.402. "Readily accessible to and usable by. . ." is the "new
construction" standard, which requires compliance with the
Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.*
§ 36.406. The only defense for failing to provide readily accessible
and usable buildings constructed under the "new construction"
standards is if the design and construction of the building to be readily
accessible and usable is "structurally impracticable". 42 U.S.C. §
12183(a)(1). The "structural impracticability" defense applies only
in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c).
"Readily accessible to and usable by. . ." is also the "alterations"
standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to
the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* §
36.402. An alteration is a change to a place of public accommodation
or commercial facility that affects or could affect the usability of the
facility or any part thereof. 28 *C.F.R.* § 36.402(b).

13. New construction and alterations must comply with either the
Justice Department's 1991 Standards for Accessible Design, or the
2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406
establishes whether the 1991 Standards for Accessible Design or

2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction

or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

14. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

## Plaintiff's Concrete and Particularized Standing to Pursue an Injunction

15. The Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at the Marathon convenience store in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and

(b). Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

16. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's facility. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

17. Plaintiff has definite plans to return to the Marathon convenience store in the near future, as described in paragraph 6. Plaintiff will return to Marathon in the near future within the next few months not only to shop and enjoy on-the-go convenience that provides quality products and adult beverages among its wide assortment of convenience store items to the public, but also to see if Marathon has repaired the barriers, and changed its practices and procedures.

Plaintiff will continue to do so even when the Marathon convenience and package store is repaired because the store is convenient and he has been going there when it was not repaired, much less if it is. Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of his disabilities. The Eleventh Circuit, held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), that when architectural barriers have not been remedied *"there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store."* Additionally, *"[A]n alleged constitutional infringement will often alone constitute irreparable harm."* *United States v. Arizona*, 2011 WL Case 1:11-cv-01804-TWT at *19; see also *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271-72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) *(finding "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."))* Due to the definiteness of Plaintiff's future plans to continue visiting the subject facility, plus Plaintiff's past patronage and frequency of travel near Defendant's

convenience and package store, there exists a genuine threat of imminent future injury, *Houston v. Marod*, 733 F.3d at 1337, footnote 6, and Mr. Dunn's pleaded intent to return to the facility is plausible.

## Architectural Barriers

18. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

19. Plaintiff has been throughout the store, from the parking lot to the entrance, to and throughout the shopping areas; to the check-out counter in the convenience store area, from the toilet room, to the check-out counter in the package store area, and in particular but not limited to all of which is more specifically described below. Defendant's facility located at 8346 AL-97, Letohatchee, AL 36047, more commonly known as "Marathon", violates the ADA in particular but not limited to:

## PARKING LOT

a) Marathon provides a parking area for able-bodied individuals,

but fails to provide an ADA accessible parking area for non-able-bodied individuals, which includes but is not limited to the following failures of Defendant:

    **A.** There are no ADA accessible parking spaces that measure 96 inches wide;

    **B.** There are no ADA accessible parking spaces with adjacent access aisles that connect to an accessible route to the entrance of Marathon;

    **C.** The non-existing ADA parking spaces and adjacent access aisles fail to be properly marked and/or maintained so as to discourage able-bodied individuals from parking in them;

    **D.** There is no signage displaying the international symbol of accessibility designating the parking space as ADA accessible;

    **E.** Marathon fails to have and otherwise fails to evenly disburse the ADA accessible parking spaces throughout the parking lot;

F. Marathon fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

b) Marathon provides parking spaces in the parking area for able-bodied individuals, but fails to provide any ADA van accessible parking spaces for non-able-bodied individuals who drive mobility vans which includes but is not limited to the following failures by Defendant:

A. There are no "van" accessible parking spaces that measure 132 inches wide with a 60-inch-wide adjacent access aisle, or alternatively measure 96 inches wide with a 96 inch wide adjacent access aisle;

B. There are no van accessible parking spaces with adjacent access aisles that connect to an accessible route to the entrance of Marathon;

C. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

D. Marathon fails to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

E. There are no van accessible parking spaces located at the shortest accessible route to the entrance;

F. Marathon fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

## FRONT ENTRANCE

c) The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

d) There is no ADA accessible route connecting the non-existing ADA parking space to the ADA accessible entrance;

## CHECK-OUT COUNTER IN CONVENIENCE STORE

e) Marathon provides a check-out counter in the convenience store for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or

accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

A. The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii.   There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B. The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

i.  There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii.  There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii.  There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C.  There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. Marathon provides a point of sale machine to transact business at the check-out counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

F. The current practice at Marathon is to place merchandise/items within the required clear counter surface;

G. The floor mat at the check-out counter is not stable, firm, or otherwise secured to the floor;

H. Marathon fails to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

## MEN'S TOILET ROOM

c) There is signage for able-bodied individuals identifying and designating an area of the store as "restrooms" however there is no signage displaying the international symbol of accessibility identifying restrooms as ADA accessible;

d) Marathon provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

  A. There is signage for able-bodied individuals designating a permanent interior space within the "restroom area" as the men's rest room however there is no signage displaying the international symbol of accessibility identifying the interior space within the restroom area as ADA accessible;

  B. The toilet room door hardware requires the use of tight grasping, twisting and/or pinching of the wrist;

C. The toilet room door locking mechanism requires the use of tight grasping, twisting, and/or pinching of the wrist;

D. The door hardware is measured at 54.78 which exceeds the maximum allowed height of 48 inches above the finished floor;

E. The light switch is measured at 50.44 inches above the finished floor which exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

F. The soap dispenser is measured at 56.66 inches above the finished floor which exceeds the maximum allowed obstructed reach range of 44 inches above the finished floor;

G. The lavatory sink drain pipes are not properly insulated or otherwise configured to protect against contact;

H. The floor surface is not properly maintained in that the tiles are missing, cracked, and otherwise in a condition that is not level;

I. The urinal obstructs the required 60 inches of clear floor space around the water closet;

J. The top gripping surface of the side wall grab bar is measured 36.75 inches above the finished floor which exceeds the maximum allowed height of 36 inches above the finished floor;

K. The side wall grab bar extends a total distance of 48.94 inches which fails to extend the required distance of 54 inches from the rear wall and therefore;

L. The top gripping surface of the rear wall grab bar is measured 36.97 inches above the finished floor which exceeds the maximum allowed height of 36 inches above the finished floor;

M. The rear wall grab bar is not properly located 12 inches on the closed side of the toilet room and 24 inches on the transfer side;

N. The rear wall grab bar is measured at 24 inches which fails to measure the minimum required length of 36 inches;

O. The toilet paper dispenser is not properly located 7-9 inches from the start of the water closet;

P. The toilet paper dispenser is located on the floor which requires the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restricts the continuous flow of paper;

Q. The current practice at Marathon is to locate the toilet paper dispenser on the floor which requires the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restricts the continuous flow of paper;

R. Marathon fails to maintain the accessible features of the toilet room that are required to be readily accessible to and usable by individuals with disabilities;

## CHECK-OUT COUNTER IN PACKAGE STORE

f) Marathon provides a check-out counter in the package store for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to

individuals without disabilities, which includes but is not limited to the following failures of Defendant:

A. The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i.  There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii.  There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B. The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    i.  There is not 30 inches of clear counter surface that is measured a maximum of 36 inches

above the finished floor positioned for a forward approach;

ii.    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii.   There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum

above the finished floor that allows for the required knee and toe clearance;

**E.** Marathon provides a point of sale machine to transact business at the check-out counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

**F.** The current practice at Marathon is to place merchandise/items within the required clear counter surface;

**G.** The floor mat at the check-out counter is not stable, firm, or otherwise secured to the floor;

**H.** Marathon fails to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

## ACCESSIBLE ROUTE THROUGHOUT THE PACKAGE STORE

**g)** Marathon provides an accessible route to and throughout the package store shopping aisles throughout the store for able-bodied individuals, but fails to provide an ADA accessible route

to and throughout the package store shopping aisles for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the package store:

A. Throughout the accessible route there is storage container boxes that is for sale to the public that obstructs the required 36 inches of clear floor space on the purported accessible route;

B. The current practice at Marathon is to maintain storage container boxes within the required clear floor or ground space of the purported accessible route;

C. Marathon fails to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the alcoholic beverage store retail shopping aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

D. Marathon has ineffective policies, practices, or procedures that ensures the purported accessible route

is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

**E.** Marathon fails to maintain the accessible features of the purported accessible route so that it is readily accessible to and usable by individuals with disabilities;

20. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

21. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

22. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are

completed, and to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facility, services and benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*

### ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

23. Plaintiff re-alleges paragraphs 1-22 above.

24. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

25. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with

disabilities in "the most integrated setting appropriate." 42 U.S.C. §
12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in
addition to recognizing that persons who use wheelchairs and
mobility aids have been forced to sit apart from family and friends,
also recognizes that persons who use wheelchairs and mobility aids
historically have been provided "segregated accommodations"
compared to non-disabled individuals, thus relegating persons who
use wheelchairs "to the status of second-class citizens." See 28
C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§
36.308, 36.203).

26. Congress enacted the ADA in light of its findings that "individuals
with disabilities continually encounter various forms of
discrimination, including outright intentional exclusion, the
discriminatory effects of architectural, transportation, and
communication barriers, overprotective rules and policies, failure to
make modifications to existing facilities and practices, exclusionary
qualification standards and criteria, segregation, and relegation to
lesser services, programs, activities, benefits, jobs, or other
opportunities." 42 U.S.C. § 12101(a)(5).

27. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

28. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485,

Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

29. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in <u>Rendon v. Valleycrest Prod., Ltd.</u> 294 F.3d 1279, (11th Cir. 2002) that:

> "A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and

> *procedures that restrict a disabled person's ability to*
> *enjoy the defendant entity's goods, services and*
> *privileges."*

## Defendant's Failed Practices and Lack of Policies Are Discriminatory

30.  Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> *"a failure to make reasonable modifications in policies,*
> *practices, or procedures, when such modifications are*
> *necessary to afford such goods, services, facilities,*
> *privileges, advantages, or accommodations to*
> *individuals with disabilities, unless the entity can*
> *demonstrate that making such modifications would*
> *fundamentally alter the nature of such goods, services,*
> *facilities, privileges, advantages, or accommodations."*

31.  Accordingly, a place of public accommodation must modify a
policy or practice that has the consequence of, or tends to deny,
access to goods or services to the disabled.

32.  As detailed below, Defendant has failed to make reasonable
modifications in its policies, practices, and procedures that are
necessary to afford its goods, services, facilities, privileges,
advantages, or accommodations to individuals with restricted
mobility. By failing to take such efforts that may be necessary to
ensure that no individual with a disability is excluded, Defendant
denied services, segregated or otherwise treated Plaintiff differently

than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

33. Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

34. Defendant's use of its convenience and package stores, and its practices at the Marathon convenience and package stores located at 8346 Hwy 97, Letohatchee, AL 36047, literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the convenience and package stores. Those practices include:

   a) Defendants fail to provide ADA accessible parking with connecting accessible routes to the entrance of the convenience store from its parking lot, which means that Mr.

Dunn is forced to depend on assistance from a third party to get into the convenience store, whereas non-disabled conveniently access the establishment from the parking lot without the need of assistance;

b) Defendants fail to provide an accessible toilet room in its establishment to Plaintiff and other disabled individuals, so Mr. Dunn cannot use the toilet room, which the able-bodied can freely do;

c) Defendant makes the check-out counter in the convenience store area inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Dunn cannot fully and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to check out;

d) Point of sale machines at the check-out counter in the convenience store area are located so as to be inaccessible, which denies Mr. Dunn the ability to equally use those machines as the non-disabled, who can independently use the

point of sale machines to pay for their purchases, though he

cannot;

e) Defendant uses the accessible counter surfaces at the counter

in the convenience store area as a sales area, so that Mr. Dunn

does not have a counter surface to use, unlike the able-bodied

who do have usable counter surfaces;

f) Defendant makes the check-out counter in the package store

area inaccessible for use by the disabled by failing to provide

either a parallel or a forward approach to the counter, which

means Mr. Dunn cannot fully and equally use the counter to

check out in the way the non-disabled do, because the non-

disabled have a counter they can use to check out;

g) Point of sale machines at the check-out counter in the package

store area are located so as to be inaccessible, which denies

Mr. Dunn the ability to equally use those machines as the

non-disabled, who can independently use the point of sale

machines to pay for their purchases, though he cannot;

h) Defendant uses the accessible counter surfaces at the counter

in the package store area as a sales area, so that Mr. Dunn

does not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

i)   Defendant fails to provide an accessible route to and throughout the package store shopping aisles throughout the store, which means that Mr. Dunn cannot travel and move throughout the package store shopping aisles the way non-disabled people can. Accordingly, he cannot fully and equally use the store as the non-disabled can;

j)   Defendant's policies, practices, and procedures are conducted without regard to disabled individuals;

35.   As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

36.   As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

Plaintiff's prior litigation in *Dunn v. Eagle Holdings, LLC et al*, 2:14-cv-00539-PWG, ALMD, exemplifies how repairs are made by this Defendant only upon demand by the disabled.

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its convenience store as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of the Marathon convenience store, as described above in detail.

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

39. To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods,

services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

40.  A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendant's convenience store consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of the Marathon convenience store; (3) Defendant will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

41.  As pled above, S & S Eagles, LLC "owns" and "operates" the Marathon store located at 8346 Hwy 97, Letohatchee, AL 36047, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures,

as alleged above.

42. The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

43. By this Complaint, Plaintiff provides sufficient notice of his demands for an alteration in Defendant's policies, practices, and procedures, as stated above.

44. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

45. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

46. Plaintiff re-alleges paragraphs 1-45 above.

47. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

48. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

49. Congress also found that: *"individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. §

12101(a)(5); *"the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;"* 42 U.S.C. § 12101(a)(7). Congress even found that: *"the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."* 42 U.S.C. § 12101(a)(8).

50. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

51. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in

or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

52. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

53. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

54. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

55. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public

accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

56. The keystone for this analysis is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience.* *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L.Ed.2d 97 (2005) See also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

57. Plaintiff, Patrick Dunn, was denied full and equal access to the Marathon convenience and package stores. Plaintiff specifically and definitely wants to return to the Defendant's establishment to enjoy the high quality products and services that it provides to its customers. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide an accessible route to and throughout the store and package store shopping aisles for disabled individuals, which means

that unlike the non-disabled, the disabled must struggle to move throughout the store and shopping aisles, if they can make it at all; Defendant failed to provide an accessible toilet room that is readily accessible to and usable by Plaintiff and other disabled individuals; Defendant failed to provide Plaintiff that same experience that non-disabled individuals have when shopping at Marathon; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counter in the convenience store area, while the non-disabled can independently access the counter and services provided at the counter; Defendant's use of the accessible counter surface in the convenience store area as a merchandise sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counter in the package store area, while the non-disabled can independently access the counter and services provided at the counter; Defendant's use of the accessible counter surface in the package store area as a merchandise sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces;

Defendant failed to maintain the accessible signage of the Marathon convenience store so that the disabled, unlike the non-disabled, do not even know what route and what paths of travel are usable by individuals with disabilities; Defendant's failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when shopping at Marathon.

58.  In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

59. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A) )(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) require that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

60. Thus, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal*

*and should be rejected." H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

61. Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Marathon.

62. Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally to the status of a second-class citizen.

63. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

64. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

65. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**WHEREFORE**, premises considered, Patrick Dunn demands judgment against the Defendant on Counts One through Three and requests the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2.   That the Court enter an order enjoining the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.   That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4.   That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the Marathon shopping experience and to the use of the Marathon facility, and further order Defendant to maintain the required accessible features at the stores so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5. That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6. That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

7. That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 17th Day of July, 2017.

/s/ Cassie E. Taylor
CASSIE E. TAYLOR
BPR # AL-8297N67R
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.356.5314 p
334.819.4032 f
CET@ADA-Firm.com
*Attorney for the Plaintiff*

/s/ _____

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
The ADA Group LLC
4001 Carmichael Road, Suite 570
P.O. Box 231477 (36123)
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*

/s/ _____

**Tracy G. BirdSong**
**BPR # AL-2170D64T**
The ADA Group LLC
4001 Carmichael Road, Suite 570
P.O. Box 231477 (36123)
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
TGB@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 17th day of July, 2017 to the following:

**S & S EAGLES, LLC**
attn.: Registered Agent
2585 S. Cobb Loop Rd.
Millbrook, AL 36054

/s/ *Cassie E. Taylor*
**CASSIE E. TAYLOR**
**BPR # AL-8297N67R**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.356.5314 p
334.819.4032 f
CET@ADA-Firm.com
*Attorney for the Plaintiff*